**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY MORGAN,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>SHARPS COMPLIANCE CORP., SHARON R. GABRIELSON, GARY R. ENZOR, PARRIS H. HOLMES, W. PATRICK MULLOY, and SUSAN N. VOGT,<br><br>　　　　　　　Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Anthony Morgan ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against Sharps Compliance Corp. ("Sharps" or the "Company") and the members of Sharps' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), in connection with the Board's attempt to sell Sharps to affiliates of Aurora Capital Partners ("Aurora") (the "Proposed Transaction").

2.	On July 12, 2022, Sharps entered into an Agreement and Plan of Merger with affiliates of Aurora, Raven Buyer, Inc. ("Parent") and Parent's wholly-owned subsidiary, Raven Houston Merger Sub, Inc. ("Purchaser") (as amended on July 22, 2022, the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Aurora will acquire Sharps for $8.75 in cash per share of Sharps common stock, via a tender offer (the "Tender Offer"). Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on July 25, 2022.

3.	On July 25, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the SEC. Specifically, the Recommendation Statement, which recommends that Sharps stockholders tender their shares in the Tender Offer, contains materially incomplete and misleading information concerning, among other things: (i) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Raymond James & Associates, Inc. ("Raymond James"); and (ii) potential conflicts of interest faced by Raymond James and Company insiders.

4.	The failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Sharps stockholders need such information in order to make a fully informed decision in connection with the Tender Offer.

5.	The Tender Offer is currently scheduled to expire at one minute following 11:59 p.m., New York City time, on August 19, 2022. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Sharps' other shareholders to make an informed decision whether to tender their shares in the Tender Offer. Therefore, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Sharps' common stock trades on the Nasdaq Capital Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Sharps common stock.

10. Defendant Sharps is a Delaware corporation, with its principal executive offices located at 9220 Kirby Drive, Suite 500, Houston, Texas 77054. Sharps' shares trade on the Nasdaq Capital Market under the ticker symbol "SMED."

11. Defendant Sharon R. Gabrielson has been Chair of the Board and a director of the Company at all relevant times.

12. Defendant Gary R. Enzor has been a director of the Company at all relevant times.

13. Defendant Parris H. Holmes has been a director of the Company at all relevant times.

14.     Defendant W. Patrick Mulloy has been President, Chief Executive Officer and a director of the Company at all relevant times.

15.     Defendant Susan N. Vogt has been a director of the Company at all relevant times.

16.     Defendants identified in paragraphs 11-15 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

17.     Founded in 1992, Sharps provides medical, pharmaceutical, and hazardous waste management services in the United States. The Company offers a broad line of product and service solutions to manage the medical waste and unused dispensed medications generated by its customers, including: (i) Sharps Recovery System for the containment, transportation, treatment, and tracking of medical waste generated outside the hospital and health care facility settings; (ii) TakeAway Recovery System to treat used needles, syringes, and other used healthcare products; (iii) Route-Based Pickup Service, a medical and hazardous waste pick-up services; (iv) MedSafe, a solution for the safe collection, transportation, and disposal of unwanted and expired ultimate-user medications; (v) TakeAway Medication Recovery System that facilitates the proper disposal of unused medications; (vi) TakeAway Medication Recovery DEA Reverse Distribution for Registrants, that facilitates the collection, return and destruction for expired or unused controlled substances; (vii) Black Pail Program for Rx, a solution with minimal segregation for the disposal of various pharmaceuticals; (viii) Inhaler Disposal to collect, transport, and destroy used pharmaceutical inhalers; (ix) Hazardous Drug Spill Control Kit for the cleanup of chemotherapy and other HD spills; (x) TakeAway Recycle System for the collection and recycling of single-use medical devices from surgical centers and other healthcare facilities; (xi) ComplianceTRAC, a

Web-based compliance and training program; and (xii) Universal Waste Shipback Systems to collect, transport, and recycle light bulbs, batteries, and other mercury containing devices. The Company also offers additional soluctions such as TakeAway Environmental Return System, SharpsTracer, Sharps Secure, Needle Disposal System, Complete Needle Collection and Disposal System, Pitch-It IV Poles, Asset Return System, and Spill Kit Recovery System, as well as Sharps MWMS, a medical waste management system. Sharps serves customers in home health care, retail clinics and immunizing pharmacies, pharmaceutical manufacturers, professional offices, assisted living and long-term care facilities, and government agencies, as well as distributors.

**The Proposed Transaction**

18. On July 12, 2022, Sharps announced that it had entered into the Proposed Transaction, stating, in relevant part:

> HOUSTON, July 12, 2022 -- Sharps Compliance Corp. (NASDAQ: SMED) ("Sharps" or the "Company"), a leading full-service national provider of comprehensive waste management solutions including medical, pharmaceutical and hazardous waste, today announced that it has entered into a definitive merger agreement to be acquired by an affiliate of Aurora Capital Partners ("Aurora"), a leading middle-market private equity firm.
>
> Under the terms of the merger agreement, Aurora will commence an all-cash tender offer to acquire all of the issued and outstanding shares of Sharps for $8.75 per share, which represents a premium of approximately 207% over Sharps' closing share price on July 11, 2022. The transaction has been unanimously approved by the Board of Directors of Sharps.
>
> Following the successful completion of the tender offer, Aurora will acquire all remaining shares not tendered in the tender offer through a second-step merger at the same price.
>
> Pat Mulloy, President and Chief Executive Officer of Sharps, stated, "Sharps is a leading provider of comprehensive solutions for the small to medium generators of medical, hazardous and pharmaceutical waste. To date, the Company has developed a tremendous customer base by offering route-based and mailback medical waste disposal services and we believe there is significant runway for increasing the market penetration for our MedSafe solution for the safe and compliant disposal of unused medications including controlled substances. In

addition to delivering immediate value to our shareholders, this transaction provides Sharps with a long-term partner that is focused on building upon our strong platform."

In connection with the entry into the merger agreement, certain directors and executive officers of Sharps have entered into tender and support agreements with Aurora pursuant to which they have, among other things, agreed to tender in the offer all of their shares.

The transaction is subject to clearance under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and other customary closing conditions. The transaction is not subject to any financing contingency and is expected to close in the third calendar quarter of 2022. Upon the completion of the transaction, Sharps will become a privately held company and shares of Sharps common stock will no longer be listed on any public market.

Raymond James & Associates, Inc. acted as financial advisor and Norton Rose Fulbright US LLP acted as legal advisor to Sharps.

**The Materially Incomplete and Misleading Recommendation Statement**

19. On July 25, 2022, the Board caused to be filed a materially incomplete and misleading Recommendation Statement with the SEC. The Recommendation Statement, which recommends that Sharps stockholders tender their shares in the Tender Offer, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the financial analyses that support the fairness opinion provided by the Company's financial advisor Raymond James; and (ii) potential conflicts of interest faced by Raymond James and Company insiders.

*Material Misrepresentations and/or Omissions Concerning Raymond James' Financial Analyses*

20. The Recommendation Statement fails to disclose material information concerning Raymond James' financial analyses.

21. For example, with respect to Raymond James' *Discounted Cash Flow Analysis*, the Recommendation Statement states:

> Raymond James calculated the present value of unlevered free cash flows that Sharps is expected to generate: (i) for calendar years 2023 through 2027 based upon Management Forecasts and (ii) for calendar years 2023E through 2027E based upon extrapolations of the Management Forecasts that were prepared by Raymond James with the consent of Sharps and which were used by Raymond James in connection with its financial analyses and in rendering its fairness opinion.

Recommendation Statement at 27. The Recommendation Statement fails, however, to disclose the extrapolations of the Management Forecasts that were prepared by Raymond James and utilized in connection with its *Discounted Cash Flow Analysis*. The Recommendation Statement further fails to describe how the Management Forecasts were extrapolated including the assumptions utilized. In addition, the Recommendation Statement fails to disclose a quantification of: (i) the EBITDA of Sharps during the terminal period of the projections; (ii) the terminal values for the Company; (iii) the inputs and assumptions underlying the discount rate range of 9.0% to 13.0%; and (iv) the Company's outstanding shares.

22. With respect to Raymond James' *Public Trading Multiples Analysis* and *Selected Transaction Analysis*, the Recommendation Statement fails to disclose: (i) the individual financial multiples and metrics for each of the companies and transactions analyzed, respectively; and (ii) Sharps' 2023E Adjusted EBITDA.

*Material Misrepresentations and/or Omissions Concerning Raymond James' and Company Insiders' Potential Conflicts of Interest*

23. The Recommendation Statement fails to disclose material information concerning potential conflicts of interest faced by Raymond James.

24. For example, the Recommendation Statement fails to disclose the details of any services Raymond James provided to Aurora or its affiliates in the two years preceding the date of its fairness opinion and the amount of compensation Raymond James has received for such services provided.

25. The Recommendation Statement also fails to disclose material information concerning Company insiders' potential conflicts of interest.

26. For example, the Recommendation Statement fails to disclose whether any of Aurora's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

27. In sum, the omission of the above-referenced information renders statements in the "Certain Unaudited Prospective Financial Information," "Opinion of Raymond James & Associates, Inc.," and "Background of the Offer and the Merger" sections of the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other stockholders of Sharps will be unable to make a sufficiently informed decision in connection with the Tender Offer and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(d) of the Exchange Act and SEC Rule 14d-9 Promulgated Thereunder**

28. Plaintiff repeats all previous allegations as if set forth in full.

29. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Sharps stockholders to tender their shares in the Tender Offer.

30. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

31. Section 14(d)(4) of the Exchange Act states:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

32. SEC Rule 14d-9 sets forth, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

33. Item 8 of Schedule 14D-9 requires a company's directors to "[f]urnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

34. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

35. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

36. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of Sharps, who will be deprived of their right to make an informed decision whether to tender their shares if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at

law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

37. Plaintiff repeats all previous allegations as if set forth in full.

38. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n(e).

39. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement to Sharps stockholders in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.  Specifically, the Recommendation Statement misrepresented and/or omitted material facts concerning Raymond James' financial analyses and potential conflicts of interest faced by Raymond James and Company insiders.

40. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer.

41. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff

has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

## COUNT III

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

42. Plaintiff repeats all previous allegations as if set forth in full.

43. The Individual Defendants acted as controlling persons of Sharps within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Sharps, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Recommendation Statement.

11

46. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e), Section 14(d) and SEC Rule 14d-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Sharps stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Sharps, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the expiration of the Tender Offer, unless and until defendants disclose the material information identified above which has been omitted from the Recommendation Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Directing the Individual Defendants to file a Recommendation Statement that does not contain any untrue statements of material fact;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 9, 2022

**ACOCELLI LAW, PLLC**

By  /s/ *Richard A. Acocelli*
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*